UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 20-1142 JGB (SPx)** | Date | August 10, 2023 |
|---|---|---|---|
| Title | ***Kimberly Noseworthy v. Chaffey Community College District, et al.*** | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

Attorney(s) Present for Plaintiff(s):     Attorney(s) Present for Defendant(s):

None Present     None Present

**Proceedings:**   Order (1) GRANTING Defendants' Motion for Summary Judgment (Dkt. No. 70); (2) DENYING AS MOOT All Pending Motions in Limine (Dkt. Nos. 94, 95, 96, 97); and (2) VACATING the August 14, 2023 Hearing and All Trial-Related Dates (IN CHAMBERS)

Before the Court is a motion for summary judgment filed by Defendants Chaffey Community College District, Laura Hope, and Susan Hardie (collectively, "Defendants"). ("Motion," Dkt. No. 70.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion and **VACATES** the August 14, 2023 hearing.

## I.   BACKGROUND

On June 3, 2020, Plaintiff Kimberly Noseworthy ("Plaintiff" or "Noseworthy") filed a complaint against Chaffey Community College District ("Chaffey") and its various employees. ("Complaint," Dkt. No. 1.) On July 26, 2021, Plaintiff filed a third amended complaint against Chaffey, Laura Hope ("Hope"), Susan Hardie ("Hardie"), and Does 1 through 10. ("TAC," Dkt. No. 60.) The TAC alleges five causes of action: (1) violation of First Amendment right to freedom of speech against Hope and Hardie; (2) violation of the California Fair Employment and Housing Act ("FEHA"), Cal. Gov't Code § 12900, et seq., for age discrimination in employment against Chaffey; (3) violation of FEHA for failure to prevent discrimination in employment against Chaffey; (4) retaliation in violation of FEHA against Chaffey; and (5) harassment and hostile environment against Chaffey, Hope, and Hardie.  (See id.)

On February 17, 2023, Defendants filed this motion for summary judgment. (Motion.) In support of the Motion, Defendants filed the following:

- Statement of Undisputed Facts ("Def. SUF," Dkt. No. 71)
- Appendix of Evidence (Dkt. No. 70-1)

Defendants' appendix of evidence includes 21 exhibits ("Def. Exs. 1–21") and the declarations of Susan Hardie ("Hardie Decl."), Laura Hope ("Hope Decl."), Alisha Serrano ("Serrano Decl."), and Viddell Lee Heard ("Heard Decl.").

On May 22, 2023, Plaintiff opposed the Motion. ("Opposition," Dkt. No. 83.) In support of the Opposition, Plaintiff filed the following:

- Statement of Genuine Disputes of Material Fact ("Pl. SGD," Dkt. No. 83-1)
- Objections to the Declaration of Susan Hardie ("Hardie Obj.," Dkt. No. 83-2)
- Objections to the Declaration of Laura Hope ("Hope Obj.," Dkt. No. 83-3)
- Objections to the Declaration of Alisha Serrano ("Serrano Obj.," Dkt. No. 83-4)
- Request for Judicial Notice ("Pl. RJN," Dkt. No. 83-5)[1]
- Objections to Defendants' Evidence ("Pl. Obj.," Dkt. No. 85)
- Appendix of Evidence (Dkt. Nos. 83-6–7)

Plaintiffs' appendix of evidence includes 59 exhibits ("Pl. Exs. 1–59); the declarations of Gloria Dredd Haney ("Haney Decl."), Kimberly Noseworthy ("Noseworthy Decl."), Joshua Fleming ("Fleming Decl."), Karen Olson ("Olson Decl."), and Angie Horton ("Horton Decl."); as well as excerpts from the depositions of Noseworthy ("Noseworthy Depo."), Hope ("Hope Depo."), and Hardie ("Hardie Depo.").

On May 30, 2023, Defendants replied in support of the Motion. ("Reply," Dkt. No. 90.) Also on May 30, 2023, Defendants filed objections to Plaintiff's evidence. ("Def. Obj.," Dkt. No. 91.)

//
//
//
//

---

[1] Plaintiff seeks judicial notice of three other employment discrimination complaints filed against Chaffey. (See Pl. RJN.) Although "the court may take judicial notice of the existence of unrelated court documents, [ ] it will not take judicial notice of such documents for the truth of the matter asserted therein." In re Bare Escentuals, Inc. Sec. Litig., 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010). Here, these other complaints are not relevant to the Motion before the Court. Therefore, the Pl. RJN is **DENIED AS MOOT**.

## II.  FACTS

### A.  Evidentiary Objections

"A trial court can only consider admissible evidence in ruling on a motion for summary judgment." Orr v. Bank of America, NT & SA, 285 F.3d 764, 773 (9th Cir. 2002); see Fed. R. Civ. P. 56(e).  For summary judgment, courts consider evidence with *content* that would be admissible at trial, even if the *form* of the evidence would not be admissible at trial.  See, e.g., Fraser v. Goodale, 342 F.3d 1032, 1036 (9th Cir. 2003).  The Court considers the parties' objections only where necessary.[2]  All other objections are **OVERRULED AS MOOT**.

### B.  Undisputed Facts

The following material facts are sufficiently supported by admissible evidence and are uncontroverted, except as noted.  These material facts are "admitted to exist without controversy" for purposes of this Motion.  See Fed. R. Civ. P. 56(e)(2); L.R. 56-3.

Plaintiff Kimberly Noseworthy began working for Chaffey Community College District in November 2001 as a Distance Education Support Specialist in the Distance Education Program. (Def. SUF ¶ 1.)  Laura Hope is Chaffey's Associate Superintendent of Instruction and Institutional Effectiveness.  (Hope Decl. ¶ 1.)  From 2008 to 2017, Hope was Chaffey's Dean of Instructional Support and oversaw the Distance Education Program.  (Def. SUF ¶ 2.)

From 2008 to 2017, Hope was Plaintiff's direct supervisor and prepared Plaintiff's performance evaluations.  (Id. ¶ 3.)  On performance evaluations, Chaffey employees may be given one of three overall ratings: Satisfactory (meaning "average to excellent"), Needs Improvement, or Unsatisfactory.  (Id. ¶ 4.)  In Plaintiff's performance evaluation for the period November 2007 to November 2009, Hope gave Plaintiff an overall rating of Satisfactory.  (Id. ¶ 5.)  In Plaintiff's evaluation for the period November 2009 to November 2011, Hope gave Plaintiff an overall rating of Satisfactory, but noted complaints that Plaintiff "did not respond quickly enough to faculty needs."  (See id. ¶¶ 6–7; Def. Ex. 3.)  In Plaintiff's evaluation for the period November 2011 to November 2013, Hope gave Plaintiff an overall rating of Satisfactory, but gave her ratings of Needs Improvement in the areas of Interpersonal Behavior and Productivity.  (See Def. SUF ¶¶ 8–9; Def. Ex. 4; Hope Decl. ¶ 5 ("I had continued to receive complaints from faculty about Plaintiff's lack of responsiveness.").)  In Plaintiff's evaluation for the period November 2013 to November 2015, Hope gave Plaintiff an overall rating of

---

[2] "[O]bjections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are thus "redundant" and unnecessary to consider here. Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary will not be counted.").

Satisfactory and observed that Plaintiff "has worked to maintain better communication regarding departmental issues." (Def. SUF ¶ 11.)

Susan Hardie is Chaffey's Interim Executive Director of Human Resources and Senior Strategic Advisor. (Hardie Decl. ¶ 1.) During the period January 2017 to January 2020, Hardie was Director of Human Resources ("HR"). (Id. ¶ 2.)

Plaintiff alleges that on February 27, 2018, Hardie requested to meet with Plaintiff on March 7, 2018. (Def. SUF ¶ 13.) Although Plaintiff repeatedly asked Hardie what the meeting was about, Hardie only said it was about an "incident." (Id. ¶ 14; Pl. SGD ¶ 14.) At the March 7, 2018 meeting, Hardie raised the issue of Plaintiff requesting confidential information from the information technology ("IT") department. (Def. SUF ¶ 15.) Plaintiff explained that she was gathering information for upcoming contract negotiations, as requested by her union, the California School Employees Association, Chapter 431 ("CSEA"). (Pl. SGD ¶ 15.) When IT informed Plaintiff that the information could be not released without HR's approval, Plaintiff did not pursue the request further. (See id.) At the March 7, 2018 meeting, Hardie did not mention Plaintiff retiring or otherwise leaving her job at Chaffey. (Def. SUF ¶ 18.)

On January 8, 2019, Plaintiff submitted a Request for Reclassification seeking to reclassify her position as Distance Education Support Specialist to a new position with the title Distance Education Systems Administrator. (Id. ¶ 19.) Plaintiff argued that because some tasks have been reassigned to an employee in a lower classification, Distance Education Support Assistant Adriana Arce ("Arce"), Plaintiff's job duties had become "more refined" and justified a reclassification and an increase in pay. (Id. ¶ 20.) Matthew Morin ("Morin"), Plaintiff's then-supervisor, denied the Request, stating: "The increased sophistication of duties conducted by the current Support Assistant has, in contradiction to this proposal, opened gaps in the Support Specialist position that the current specialist has not yet filled. This is evidenced in the ability of the area to function without a support specialist for over one month while this individual has been on leave." (Id. ¶ 21.) Plaintiff contends that Morin's comment constituted retaliation because it was "mean" and "devalued" her as an employee. (Id. ¶¶ 22–23.)

Chaffey utilizes a third-party consultant, Forsberg Consulting Services ("Forsberg"), to review and make recommendations regarding employee requests for reclassification. (Id. ¶ 24.) Chaffey asked Forsberg to analyze Plaintiff's Request for Reclassification. (Id. ¶ 25.) On or about June 24, 2019, Forsberg issued a memorandum outlining its analysis of Plaintiff's Request and recommending that it be denied. (Id. ¶ 26.) It is Chaffey's practice to follow Forsberg's recommendations with respect to Requests for Reclassification, and Chaffey did so with respect to Plaintiff's Request. (Id. ¶ 27.)

On January 17, 2019, heavy rains caused major flooding on Chaffey's campus, including in the Administration Building where Plaintiff worked. (Id. ¶ 28.) Plaintiff and other employees were moved to other locations pending repairs of the Administration Building. (Id. ¶ 29.) Prior to commencing repairs, Chaffey tested for asbestos and discovered asbestos behind certain electrical receptacles. (Id. ¶ 30.) Asbestos abatement was completed by February 5, 2019. (Id.)

Plaintiff asked Hardie about the "levels" of asbestos found. (Id. ¶ 31.) Hardie asked a facilities and maintenance employee named Rich to respond to Plaintiff, and Rich advised Plaintiff that the amount of asbestos was "acceptable" and that if it was not disturbed it was not anything to worry about. (Id. ¶ 32.) Plaintiff found this response unacceptable. (Pl. SGD ¶ 32.)

Plaintiff then filed an anonymous complaint with the California Department of Industrial Relations Division of Occupational Safety and Health ("Cal/OSHA"). (Def. SUF ¶ 33.) The complaint asserted: "The employees [sic] have not provided us information on where the asbestos are [sic] in the [Administration] building rooms 145-191." (Id.) On February 20, 2019, Cal/OSHA forwarded the anonymous complaint to Chaffey for response. (Id. ¶ 34.) On March 7, 2019, Hardie prepared Chaffey's response, which explained the post-flood discovery and abatement. (Id. ¶ 35.) Hardie attests that "[a]t the time [she] prepared the District's March 7, 2019 response letter, [she] was not aware that Plaintiff Kim Noseworthy had filed the complaint about asbestos with Cal/OSHA." (Hardie Decl. ¶ 7.) Hardie learned that it was Plaintiff who filed the Cal/OSHA complaint on March 20, 2019, when Plaintiff's union representative informed Hardie so.[3] (Id. ¶ 7.)

After the flooding in the Administration Building, Plaintiff was moved to the Student Services Administration ("SSA") Building near her supervisor, Morin. (Id. ¶ 38.) Plaintiff now shared an office with other employees, including Candice Brock ("Brock"). (Hardie Decl. ¶ 8.) Brock kept a log documenting Plaintiff's improper behavior at work. (Def. SUF ¶ 39; see Def. Ex. 9 at 16–17.) Brock's log stated that she "[n]otified Matt [Morin] of Kim's swearing, slamming of her computer mouse and keyboard. Every conversation we have in the office is met with loud huffs." (Def. SUF ¶ 40; see also id. ¶¶ 43–44.) On February 8, 2019, "[s]uddenly Kim stood up and yelled shit and that she was going to hurt someone, proceeded to slam/throw her mouse and keyboard and walked out of the office." (Id. ¶ 41.) Morin documented the incident in a Memo to Record dated February 11, 2019. (See id. ¶ 42.) In the Memo to Record, Morin wrote that Plaintiff "threw [her] computer mouse on the desk and shouted an expletive at the computer screen." (Id.) "The staff also reported that [Plaintiff] stated that [she was] going 'to hurt someone' and that there had been several incidents like this in the past weeks." (Id.)

Plaintiff disagrees with Brock's characterization of the incident. (See Pl. SGD ¶ 41.) Plaintiff explains that on February 8, 2019, she received a phone call from a student who was enrolled in an American Sign Language ("ASL") course at Chaffey. (Noseworthy Decl. ¶ 25.) ASL courses feature a specific application to allow hearing impaired students and faculty to use sign language with each other. (Id.) However, this student was having difficulty accessing the

---

[3] Plaintiff disputes this fact but does not provide any contrary evidence. Plaintiff claims that Hardie knew it was Plaintiff who filed the Cal/OSHA complaint before Hardie prepared the response letter. (See Pl. SGD ¶ 36.) The only evidence Plaintiff offers is her own testimony that "Hardie had been the very first person I contacted after learning about the problem with asbestos in the [Administration] building." (Noseworthy Decl. ¶ 22.) Just because Plaintiff complained to Hardie regarding asbestos does not prove that Hardie knew it was Plaintiff who filed the Cal/OSHA complaint.

application. (Id.) Plaintiff discovered that the faculty member had not set up the application using the instructions she had given. (Id.) Plaintiff attests that "[o]n this day, it was very frustrating for me to see that faculty were not setting the application correctly, and it was the students who were paying the price." (Id.) After the student hung up the phone, Plaintiff "cursed (probably said 'shit') and forcefully hung up the phone." (Id.) To Plaintiff's disappointment, after this day, there was no further discussion by Morin, Hope, Hardie, or Serrano regarding problems with the ASL course. (Id.)

>On February 27, 2019, Brock emailed Morin, copying Hope and Hardie:
>
>I came in at 7:00 this morning and when I got here Kim Noseworthy was already here. I said good morning and she responded good morning, followed with "shit", slammed down her mouse, pushed her keyboard across the desk, and mumbled for several minutes. We got through the next hour with many sighs and mumbles. She left for a CSEA meeting at 8:30, returned at approximately 2:00 at which time I said "hi Kim". Her response was to stare at me, walk to her desk, throw all of her items on the desk and walk back out.
>
>Unfortunately, today's interaction and behavior has been quite common since she has been assigned to this office. . . . [W]e have had nothing but resistance and negativity from Kim from day one. This office is becoming a hostile work environment and it seems very unfair for those of us who enjoy coming to work to do our jobs . . . .

(Def. Ex. 9 at 14.) On March 1, 2019, Brock again emailed Morin, Hope, and Hardie noting that it was not "in [her] best interest to be in the office [with Plaintiff] without other staff present." (Def. SUF ¶ 46.)

On or about March 13, 2019, Hardie placed Plaintiff on paid administrative leave pending the outcome of an independent investigation into Plaintiff's conduct. (Id. ¶ 47.) Hardie attests that she "believed putting Plaintiff on paid administrative leave was justified given that the complaints came from a person who works in the same office as Plaintiff and involve allegations that Plaintiff's conduct was disruptive and potentially created a hostile work environment." (Hardie Decl. ¶ 11.) Hardie's decision to place Plaintiff on leave was "based entirely on the nature of the complaints made regarding Plaintiff's conduct at work," not "in any way on Plaintiff's age or any other factors." (Id.) Hope agreed with Hardie's decision. (Hope Decl. ¶ 11.)

Hardie engaged Solomon Law, APC as an independent, neutral factfinder to investigate Plaintiff's conduct. (Hardie Decl. ¶ 12.) Solomon assigned attorney Christine McGovern ("McGovern") to conduct the investigation. (Id.) At no time did Hardie attempt to influence McGovern regarding what conclusions she should reach as a result of the investigation. (Id.) McGovern submitted her report ("McGovern Report") to Chaffey on April 12, 2019. (Def. SUF ¶ 51; see Def. Ex. 9 at 1–10.) Hardie found the McGovern Report "thorough and credible."

(Def. SUF ¶ 52.) McGovern had interviewed Plaintiff, Brock, Morin, Arce, and Jacqueline Romero ("Romero"), all of whom shared an office. (Id. ¶ 53.) McGovern had also reviewed written materials, including Brock's log and emails and Morin's Memo to Record. (Id. ¶ 54.)

McGovern concluded that Plaintiff's behavior "has created a tense and unpleasant work environment." (Def. Ex. 9 at 6; Def. SUF ¶ 60.) McGovern reported that Arce and Romero shared Brock's concerns about Plaintiff's behavior, describing Plaintiff as "negative, confrontational, emotional, angry, and bitter." (Id. ¶ 56.) All three witnesses claimed that on a near daily basis Plaintiff "stares and glares," does not say hello, slams her computer mouse down, mumbles under her breath, says "shit," becomes physically angry when she gets frustrated by her work, and has a tendency to walk away and leave the office for a time. (Id.) Further, McGovern concluded that Plaintiff's "behavior did not change simply because her work environment changed." (Id. ¶ 57.) According to Arce, whose office was next to Plaintiff's in the Administration Building, Plaintiff's behavior in the shared office space was actually "toned down." (Id.) Arce said it was not unusual for her to overhear Plaintiff slamming down her computer mouse or phone or swearing. (Id.) Finally, McGovern concluded that the evidence did not support a finding that Brock's complaint or the ensuing investigation were motivated by anything other than Plaintiff's behavior. (See Def. Ex. 9 at 8.) Plaintiff's "attempts to blame the complaint and ensuing investigation on Ms. Brock's stance on the union or the anonymous OSHA complaint Ms. Noseworthy filed is simply an example of her failing to take responsibility for her actions." (Id. at 7.)

Hardie discussed the McGovern Report with Hope and recommended that Plaintiff be issued a Letter of Reprimand for her behavior. (Def. SUF ¶ 61.) Hope agreed with Hardie's recommendation. (Id.) On May 15, 2019, Hope issued Plaintiff a Letter of Reprimand, stating: "Your conduct has made your co-workers feel extremely uncomfortable at the workplace and it has potentially created a hostile work environment." (Def. Ex. 10 at 1.) In the Letter, Hope directed Plaintiff to, among other things, "[t]reat all employees, staff, students, and community members with courtesy and respect," and also offered Plaintiff assistance to meet this expectation. (Id. ¶ 64.)

Plaintiff, Hope, and Hardie met to discuss the Letter of Reprimand. (Id. ¶ 65.) Plaintiff alleges that during the meeting, Hope stated that Plaintiff "needed to [be] doing things that were in [Plaintiff's] own best interests." (Id. ¶ 66.) Plaintiff interpreted this to mean that if she did not retire, the harassment would continue. (Id. ¶¶ 67–68.) However, Plaintiff admits that Hope did not mention Plaintiff retiring. (Id. ¶ 69.)

Upon Plaintiff's return from administrative leave, her workstation was moved to the corner, with Brock sitting directly behind her. (Id. ¶ 70.) Plaintiff contends that "having the person who accused me of creating a hostile environment sitting behind me and being able to see absolutely everything I did on the computer and monitor every action that I had" was "intimidation." (Noseworthy Depo. 34:5–9.)

On or about August 5, 2019, Alisha Serrano ("Serrano") resumed oversight of the Distance Education Program. (Id. ¶ 74.) Serrano previously supervised Plaintiff from approximately February to August 2018. (Id.) On or about August 5, 2019, Plaintiff had a meeting with Serrano. (Id. ¶ 85.) Plaintiff contends that when she referred to Arce doing Plaintiff's work, Serrano asked Plaintiff if she felt that way because Plaintiff "would be retiring soon." (Id. ¶ 86.) Plaintiff contends that this comment meant "they were going to try to push me into retirement." (Id.) Neither Hope nor Hardie attended the August 5, 2019 meeting. (Id. ¶ 87.) However, Plaintiff believes that Serrano was in "constant communication" with Hardie about her. (Id. ¶ 88.) Although Plaintiff does not recall any other specific instance when Serrano, Hope, or Hardie talked to her about retirement, Plaintiff testified that "everybody talks generally about retirement." (Id. ¶ 91.)

On September 18, 2019, Plaintiff and Serrano attended a Distance Education Committee meeting along with other faculty members. (Id. ¶ 75.) During the meeting, Plaintiff made a comment that faculty do not know the difference between a.m. and p.m. (Id. ¶ 76.) Serrano regarded the comment as rude, inappropriate, and insulting to faculty members. (Id. ¶ 77; Serrano Decl. ¶ 3.) Serrano recalled several faculty members reacting to Plaintiff's comment with surprise and embarrassment. (Serrano Decl. ¶ 3.) On September 19, 2019, Serrano spoke with Plaintiff about the comment and told her the comment was inappropriate and insulting. (Def. SUF ¶ 79.) Later that day, Serrano sent an email to members of the committee apologizing for the comment. (Id. ¶ 80; see Def. Ex. 12.) Neither Hope nor Hardie played any role in Serrano's decision to apologize for Plaintiff's comment. (Serrano Decl. ¶ 4.) Plaintiff contends that Serrano's apology for a "factual statement" Plaintiff made constituted harassment. (Def. SUF ¶ 81.)

In Plaintiff's performance evaluation for the period November 2017 to November 2019, Serrano gave Plaintiff an overall rating of Needs Improvement. (Id. ¶ 92.) Specifically, Serrano gave Plaintiff ratings of Needs Improvement in the areas of Interpersonal Behavior, Teamwork, and Communication. (Id.) Serrano attests that she assigned Plaintiff these ratings based on her "individual perceptions regarding Plaintiff's work performance during the review period and also based on the Letter of Reprimand that Plaintiff had received in May 2019." (Serrano Decl. ¶ 5.) Serrano believed the ratings were "fair and appropriate," and "reflected [her] intention to assist Plaintiff in improving her work performance." (Id. ¶ 7.) Hope did not influence the ratings Serrano assigned. (Id.)

When an employee is given an overall rating of Needs Improvement, the employee's supervisor is required to prepare a Performance Improvement Plan ("PIP"). (Def SUF ¶ 99.) On December 3, 2019, Serrano presented and discussed with Plaintiff a PIP for the period December 4, 2019 to June 30, 2020. (Id. ¶ 100; see Def. Ex. 14.) The PIP identified six areas of improvement, including treating "all employees, students, and community members with courtesy and respect" and monitoring "her written and verbal communication, including her tone." (Def. Ex. 14 at 1.) Plaintiff submitted a "rebuttal" to the evaluation and the PIP. (Noseworthy Decl. ¶ 97.) In her rebuttal, Plaintiff wrote that Chaffey "is fishing for situations

and excuses to devalue me as a contributing classified employee" and "hoping that I will constructively retire." (Id.)

Plaintiff resigned and retired on January 3, 2020. (Def. SUF ¶ 105.) Plaintiff was assigned to work on a video presentation before the winter break. (Id. ¶ 106.) Plaintiff claims that she requested particular equipment for the project but was not given the right equipment. (Id.) When Plaintiff returned from the winter break on January 3, 2020, Serrano told her that the project was not good enough and would need to be redone. (Id. ¶ 107.) Plaintiff acknowledged that the presentation "was not good," but believed that it was the best she could do with the equipment she was given. (Id. ¶ 108.) It was this conversation with Serrano that made Plaintiff want to resign and retire. (Id. ¶ 109.)

## III. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying the portions of the pleadings and record that it believes demonstrate the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party need not produce evidence negating or disproving every essential element of the nonmoving party's case. Id. at 325. Instead, the moving party need only prove there is an absence of evidence to support the nonmoving party's case. Id.; In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010). The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

If the moving party has sustained its burden, the nonmoving party must then show that there is a genuine issue of material fact that must be resolved at trial. Celotex, 477 U.S. at 324. The nonmoving party must make an affirmative showing on all matters placed at issue by the motion as to which it has the burden of proof at trial. Celotex, 477 U.S. at 322; Anderson, 477 U.S. at 252. A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. "This burden is not a light one. The nonmoving party must show more than the mere existence of a scintilla of evidence." In re Oracle, 627 F.3d at 387 (citing Anderson, 477 U.S. at 252).

When deciding a motion for summary judgment, the court construes the evidence in the light most favorable to the nonmoving party. Barlow v. Ground, 943 F.2d 1132, 1135 (9th Cir. 1991). Thus, summary judgment for the moving party is proper when a "rational trier of fact" would not be able to find for the nonmoving party based on the record taken as a whole. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. DISCUSSION

Defendants move for summary judgment in their favor on all five causes of action. (See Motion.) The Court addresses each cause of action in turn.

### A. First Amendment Violation

In her first cause of action, Plaintiff alleges that Hope and Hardie violated her First Amendment rights to freedom of speech and association under 42 U.S.C. 1983. ("Section 1983").[4] (TAC ¶¶ 37–40.) The First Amendment shields public employees from employment retaliation based on their protected speech. Hagen v. City of Eugene, 736 F.3d 1251, 1257 (9th Cir. 2013). The Ninth Circuit has explained that "our 'recognition for the State's interests as an employer in regulating the speech of its employees' requires us to 'arrive at a balance between the interests of the [public employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.'" Id. (alteration in original) (quoting Karl v. City of Mountlake Terrace, 678 F.3d 1062, 1068 (9th Cir. 2012)). To strike this balance, courts in the Ninth Circuit ask five questions:

> (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Eng v. Cooley, 552 F.3d 1062, 1070 (9th Cir. 2009). "[A]ll the factors are necessary, in the sense that failure to meet any one of them is fatal to the plaintiff's case." Dahlia v. Rodriguez, 735 F.3d 1060, 1067 n.4 (9th Cir. 2013) (en banc).

The Court finds that Plaintiff cannot demonstrate the third factor, that her speech was a substantial or motivating factor in an adverse employment action. (See Motion at 21–22.) Plaintiff alleges that Hope and Hardie committed "vicious, punitive acts" against her when

> she publicly identified the discrimination at [Chaffey] leveled against her as a public employee, both written and verbal, which is a protected activity under FEHA; when she complained to OSHA regarding the lack of health and safety on campus due to asbestos which had not been removed for decades; when she was active in the California Service Employees Association ("CSEA") and associated with the union representative at [Chaffey]; and when she complained that the needs of students were not being met because of the failure on the part of some teachers to

---

[4] Section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983.

> become familiar with the technology required for Distance Learning . . . all of which are of and concerning the public's interests.

(TAC ¶ 38.) However, Plaintiff offers no evidence to support these allegations. Hardie placed Plaintiff on administrative leave after Brock raised concerns about Plaintiff's behavior. (See Hardie Decl. ¶ 11.) Hardie attests that her decision "was based entirely on the nature of the complaints made regarding Plaintiff's conduct," and not "based in any way on Plaintiff's age or any other factors." (Id.) There is no evidence that Hardie considered Plaintiff's asbestos complaint, union membership, or advocacy on behalf of hearing impaired students in deciding to place Plaintiff on administrative leave. In other words, Hardie would have placed Plaintiff on administrative leave based on Brock's "allegations that Plaintiff's conduct was disruptive and potentially created a hostile work environment," even absent Plaintiff's speech. (Id.)

Hope agreed with Hardie's recommendations to place Plaintiff on administrative leave and to reprimand Plaintiff. (Hope Decl. ¶ 11.) After an independent third-party consultant found Brock's allegations to be credible and corroborated by other witnesses (see McGovern Report), Hope issued a Letter of Reprimand. (Hope Decl. ¶ 12; see Def. Ex. 10.) Again, there is no evidence that Hope considered Plaintiff's asbestos complaint, union membership, or advocacy on behalf of hearing impaired students—to the extent Hope even knew about Plaintiff's protected speech—in deciding to issue the Letter of Reprimand. Hope would have issued the Letter of Reprimand based on the McGovern Report, even absent Plaintiff's speech. Neither Hardie, the Director of HR, nor Hope, the Associate Superintendent, participated in any other alleged adverse employment action. Thus, Plaintiff fails to raise a genuine issue of material fact as to whether Plaintiff's speech was a substantial or motivating factor in any adverse employment action.[5] Critically, Plaintiff cannot show causation. Accordingly, the Court **GRANTS** the Motion as to Plaintiff's first cause of action.

### B. Age Discrimination

In her second cause of action, Plaintiff alleges that Chaffey discriminated against her on the basis of her age in violation of FEHA. (TAC ¶¶ 41–42.) FEHA prohibits employment discrimination against employees over the age of forty. Cal. Gov't Code § 12941. "California has adopted the three-stage burden-shifting test established by the United States Supreme Court for trying claims of discrimination, including age discrimination . . . ." Guz v. Bechtel Nat'l, Inc., 8 P.3d 1089, 1113 (Cal. 2000). First, the plaintiff must establish a prima facie case of discrimination. Weil v. Citizens Telecom Servs. Co., 922 F.3d 993, 1002 (9th Cir. 2019) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for its action. Id. (quoting McDonnell Douglas, 411 U.S. at 802). Then, in order to prevail, the plaintiff must produce "sufficient evidence to raise a genuine issue of material fact as

---

[5] The Court assumes without deciding that at least one of Hope, Hardie, and Serrano's alleged actions constitutes an adverse employment action.

to whether the employer's proffered nondiscriminatory reason is merely a pretext for discrimination." Dominguez-Curry v. Nev. Transp. Dep't, 424 F.3d 1027, 1037 (9th Cir. 2005).

The Court finds that Plaintiff does not establish a prima facie case of age discrimination. "An employee alleging age discrimination must ultimately prove that the adverse employment action taken was ***based on his or her age***." Hersant v. Dep't of Soc. Servs., 67 Cal. Rptr. 2d 483, 486 (Cal. Ct. App. 1997) (emphasis added). Here, Plaintiff provides no evidence that Hope, Hardie, Serrano, or any other Chaffey employee impermissibly considered Plaintiff's age in making any decision regarding Plaintiff's employment. Again, Hardie avows that her decision to place Plaintiff on administrative leave was "not based in any way on Plaintiff's age." (Hardie Decl. ¶ 11.) And Hope was not involved in the day-to-day of Plaintiff's employment. (See Hope Decl. ¶ 13 ("I did not influence Ms. Serrano regarding what ratings to include on Plaintiff's 2019 performance evaluation or whether to put Plaintiff on a PIP.")).

The only mention of retirement from a supervisor occurred when Serrano met with Plaintiff on August 5, 2019. (Def. SUF ¶ 85.) At this meeting, Plaintiff expressed concerns that Arce, a younger and less experienced colleague, was doing work that was previously assigned to Plaintiff. (See Noseworthy Decl. ¶ 84; Noseworthy Depo. 49:8–22.) Plaintiff claims Serrano responded by asking "if I might be feeling this way because I would be retiring soon." (Noseworthy Depo. 50:7–8.) Plaintiff interpreted this comment to mean that Hope, Hardie, and Serrano "were going to try to push [her] into retirement." (Def. SUF ¶ 86; Def. Ex. 15 at 3.) However, at Plaintiff's deposition, when asked whether "[d]uring that meeting did Ms. Serrano suggest that she wanted you to retire?", Plaintiff admitted "[n]o." (Noseworthy Depo. 52:5–7.)

Plaintiff's contention that Hope, Hardie, and Serrano were conspiring to force Plaintiff to retire is "mere speculation or conjecture, which is insufficient to defeat summary judgment." Arnold v. Dignity Health, 266 Cal. Rptr. 3d 252, 266 (Cal. Ct. App. 2020). Serrano's remark about retirement in August 2019 does not support the conclusion that Plaintiff received a negative performance evaluation in November 2019 due to Plaintiff's age. Particularly when, in September 2019, Serrano reprimanded Plaintiff for making a "rude, inappropriate, and insulting" comment during a staff meeting. (See Serrano Decl. ¶¶ 3–4.) Serrano also cited a June 2018 "abrupt email" Plaintiff had sent to faculty members and the May 2019 Letter of Reprimand from Hope as reasons why Plaintiff needed to improve her communication skills. (See id. ¶¶ 5–7.) There is no evidence that Serrano or any other Chaffey employee would have acted differently if Plaintiff had been under forty years of age. Thus, Plaintiff fails to raise a genuine issue of material fact as to whether Plaintiff's age was a substantial or motivating factor in any adverse employment action. These circumstances do not suggest that a discriminatory motive was present. See Holtzclaw v. Certainteed Corp., 795 F. Supp. 2d 996, 1010 (E.D. Cal. 2011). Accordingly, the Court **GRANTS** the Motion as to Plaintiff's second cause of action.

### C. Failure to Prevent Age Discrimination

In her third cause of action, Plaintiff alleges that Chaffey failed to prevent discrimination on the basis of her age in violation of FEHA. (TAC ¶¶ 43–45.) FEHA requires an employer to

"take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k). "A plaintiff seeking to recover on a failure to prevent discrimination claim under FEHA must show that (1) [she] was subjected to discrimination; (2) defendant failed to take all reasonable steps to prevent discrimination; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm." Achal v. Gate Gourmet, Inc., 114 F. Supp. 3d 781, 804 (N.D. Cal. 2015). Courts have interpreted a failure-to-prevent-discrimination claim as "essentially derivative" of a discrimination claim. Id. Here, since there is no viable age discrimination claim, there is no derivative failure-to-prevent-age-discrimination claim. See Trujillo v. N. Cnty. Transit Dist., 73 Cal. Rptr. 2d 596, 601–02 (Cal. Ct. App. 1998) ("We do not believe the statutory language supports recovery on such a private right of action where there has been a specific factual finding that no such discrimination or harassment actually occurred at the plaintiff's workplace."). Accordingly, the Court **GRANTS** the Motion as to Plaintiff's third cause of action.

**D. Retaliation**

In her fourth cause of action, Plaintiff alleges that Chaffey retaliated against her in violation of FEHA. (FAC ¶¶ 46–52.) Under Section 12940(h) of FEHA, an employer may not "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part." Cal. Gov't Code § 12940(h). "To establish a prima facie case of retaliation under the FEHA, a plaintiff must show '(1) he or she engaged in a "protected activity," (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action.'" Scotch v. Art Inst. of Cal., 93 Cal. Rptr. 3d 338, 366 (Cal. Ct. App. 2009) (quoting Yanowitz v. L'Oreal USA, Inc., 116 P.3d 1123, 1130 (Cal. 2005)).

In the TAC, Plaintiff alleges that she engaged in a protected activity "when she complained to Hope, Hardie, President Henry Shannon about the disparate treatment of disabled students and ALS [sic] faculty who were prevented from participating equally like nondisabled students and faculty in the Distance Learning Program." (TAC ¶ 48.) The only instance of Plaintiff "complaining" about the treatment of disabled students was when Plaintiff became very upset after a hearing impaired student reported an issue on February 8, 2019. (See Noseworthy Decl. ¶ 25.) The student was having difficulty accessing an online application because the faculty member teaching the course had not properly set it up. (See id.) Plaintiff "asked Arce about the situation and if she had received a complaint from an ASL student, and she said she had but did nothing." (Id.) Plaintiff did not raise the issue with Morin, Hope, or Hardie. Instead, Plaintiff "threw [her] computer mouse on the desk and shouted an expletive at the computer screen." (Def. Ex. 9 at 19; see also McGovern Report.) Plaintiff's officemates also reported that Plaintiff stated she was going "to hurt someone." (McGovern Report.) This outburst is the extent of Plaintiff's "protected activity."

Even if the Court were to accept that Plaintiff's outburst constituted protected activity, Plaintiff cannot show a casual link existed between the protected activity and an adverse employment action. Later that day, Morin called Plaintiff into his office to talk about what

happened. (McGovern Report.) The meeting "culminated in Mr. Morin preparing and presenting Ms. Noseworthy with a Memo to Record, documenting their discussion." (Id.) Plainly, Morin reprimanded Plaintiff for her behavior, not for her concerns about the hearing impaired student's accessibility issues. Plaintiff acknowledges as much. (See Noseworthy Decl. ¶ 25 ("Morin . . . told me . . . that my behavior was not acceptable.").) It was not until more complaints about Plaintiff's behavior arose on February 27, 2019 and March 1, 2019 that Plaintiff was placed on administrative leave. And it was not until an independent consultant concluded that Plaintiff's behavior "created a tense and unpleasant work environment" that Plaintiff received a Letter of Reprimand on May 15, 2019. Later in the year, after another incident in September 2019, Plaintiff received a negative performance review and was placed on a PIP. Even then, Plaintiff was not terminated; she voluntarily resigned in January 2020. Each adverse employment action was taken in response to Plaintiff's behavior. Nothing suggests that any adverse action was taken in response to Plaintiff's "advocacy" on behalf of hearing impaired students—an issue that Plaintiff did not appear to raise again after February 8, 2019. Because Plaintiff cannot show causation, the Court **GRANTS** the Motion as to Plaintiff's fourth cause of action.

### E. Harassment

Finally, Plaintiff alleges that Chaffey, Hope, and Hardie harassed her based on her age. (FAC ¶¶ 53–58; see id. ¶ 54 ("Hope and Hardie constantly subjected Noseworthy to verbal abuse because of her age.").) An "employee claiming harassment based upon a hostile work environment must demonstrate that the conduct complained of was ***severe enough or sufficiently pervasive*** to alter the conditions of employment and create a work environment that qualifies as hostile or abusive to employees ***because of***" a protected status. Lyle v. Warner Bros. Television Prods., 132 P.3d 211, 220 (Cal. 2006). Courts have held that "an employee generally cannot recover for harassment that is occasional, isolated, sporadic, or trivial; rather, the employee must show a concerted pattern of harassment of a repeated, routine, or a generalized nature." Id. at 223. As Defendants emphasize, harassment must be both objectively and subjectively offensive. (Motion at 29 (citing McCoy v. Pac. Mar. Ass'n, 156 Cal. Rptr. 3d 851, 861 (Cal. Ct. App. 2013)).)

As discussed above, Plaintiff provides no objective evidence that Hope, Hardie, Serrano, or any other Chaffey employee harassed Plaintiff regarding her age. Hope and Hardie never made any comments about Plaintiff's age. Only Serrano once made a comment about retirement, which Plaintiff admittedly did not interpret to mean that Serrano wanted her to retire. (See Noseworthy Depo. 52:5-7.) Further, Plaintiff's vague recollection that "everybody talks generally about retirement" is insufficient to defeat summary judgment. (Id. 51:20.) Thus, Plaintiff fails to raise a genuine issue of material fact as to whether Defendants harassed her on the basis of her age. Accordingly, the Court **GRANTS** the Motion as to Plaintiff's fifth cause of action.

//
//
//

## V.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' Motion and **VACATES** the August 14, 2023 hearing.  The Court **DENIES AS MOOT** all pending motions in limine (Dkt. Nos. 94, 95, 96, 97) and **VACATES** all trial-related dates.  Summary judgment is granted in Defendants' favor on all claims.  Judgment shall issue separately.

**IT IS SO ORDERED.**